CITY OF CHARLOTTE AND COUNTY OF MECKLENBURG v. LITTLE-
McMAHAN PROPERTIES, INC. (FORMERLY NEW SOUTH PROPERTIES, INC.), A
NORTH CAROLINA CORPORATION; EARL J. RODMAN, AGENT; EDWIN R.
JOHNSON, TRUSTEE; AND JAMES G. JOHNSTON, SARAH P. JOHNSTON,
SARAH P. JOHNSTON, CUSTODIAN FOR ROBERT MIDDLETON JOHNSTON UNDER
THE NORTH CAROLINA UNIFORM GIFTS TO MINORS ACT, AND SARAH P.
JOHNSTON, CUSTODIAN FOR SUSAN MIDDLETON JOHNSTON UNDER THE NORTH
CAROLINA UNIFORM GIFTS TO MINORS ACT

No. 8026SC1111

(Filed 16 June 1981)

**1. Taxation § 25 — ad valorem taxes — obligation of property owner to pay**

Property itself serves two purposes in the scheme of ad valorem taxation under the laws of N.C.: one, its value forms the basis for the assessment, and two, the property itself stands as security for the collection of taxes not paid by the owner, who by statutory definition is the "taxpayer"; therefore, when the owner pays the taxes he owes on his property, the tax lien is thereby discharged, and there was no merit to defendant's argument that by paying the tax liens on the property in question and having the liens assigned to it, defendant could thereby pass on the tax obligation to the property itself and, in this case, pass the tax obligation on to the mortgagee under the deed of trust.

**2. Taxation § 25 — ad valorem taxes — obligation of landowner**

Where defendant purchased stock of a corporation, executed promissory notes as payment for purchase of the stock, executed a deed of trust on land which constituted the assets of the corporation to secure the payment of those notes, defaulted on the notes secured by the deed of trust, subsequent to the foreclosure sale, at which the mortgagee purchased the property, paid the city-county tax collector the aggregate of sums due for past due taxes and interest, and had the tax lien for those years assigned to it, there was no merit to defendant's contention that the effect of the trial court's order, which barred it from recovering from the mortgagee any portion of the taxes, interest or costs which it had previously paid, was to make defendant "personally" liable for the unpaid taxes, a result which it argued was erroneous because a tax foreclosure is an *in rem* proceeding which cannot form the basis for a personal judgment against the taxpayer, since defendant was obligated to pay the taxes as they were assessed from year to year; defendant could not transfer its obligation to pay the taxes to the mortgagee; the mortgagee had a right under the deed of trust and pursuant to G.S. 105-386 to look to defendant to pay the taxes due

on the property; and defendant, by paying the taxes due, did only that which it could have, by other proceedings, been required to do.

APPEAL by defendant, Little-McMahan, from *Burroughs, Judge.* Judgment entered 11 August 1980 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 7 May 1981.

This action was instituted by plaintiffs in May, 1979, to enforce their tax liens for the years 1975 through 1978 on a 46.78 acre tract of land. The complaint named Little-McMahan and Rodman as defendants, alleging their ownership of the land. Rodman answered as agent for James G. Johnston and Sarah P. Johnston individually; and Sarah P. Johnston as custodian for Robert M. Johnston and Susan M. Johnston, minors. The Johnstons were later joined as additional parties defendant. In his answer, Rodman set out a cross-claim against Little-McMahan and Edwin R. Johnson, Trustee. Little-McMahan and Edwin Johnson answered Rodman's cross-claim and in turn, cross-claimed against Rodman. Other pleadings were appropriately filed, including a motion by Little-McMahan, consented to by plaintiffs, that Little-McMahan be substituted as party plaintiff in the action. After the pleadings were joined, affidavits and factual stipulations were filed. The factual background necessary to our decision, as stipulated by the parties, is as follows.

In May of 1973, New South Properties, Inc. (New South), predecessor of Little-McMahan, entered into an agreement with James G. Johnston, Sarah P. Johnston, Sarah Johnston as custodian for Robert M. Johnston and Susan M. Johnston, minors, for the purchase of all of the capital stock of Johnston Southern Corporation. The sole assets of Johnston Southern consisted of the 46.78 acre tract of land, together with an account receivable in the sum of $15,600.00. At the closing of the stock purchase agreement, New South acquired all of the stock of Johnston Southern and executed four promissory notes to the Johnstons as payment for the purchase of the stock. In addition, Johnston Southern executed a deed of trust on the 46.78 acre tract of land to secure the payment of those notes. Pursuant to the terms of the deed of trust, and as a result of the payment by New South of the sum of $92,380.00 ($107,980 less $15,600 owed by the Johnstons to Johnston Southern), 9.1 acres of the 46.78 acres were released to

New South free of the deed of trust. Soon thereafter, Johnston Southern was liquidated and the property was deeded to New South, subject to the deed of trust. The only payment made by New South on the notes secured by the deed of trust was in the sum of $7,425.00. In February 1979, foreclosure proceedings were instituted pursuant to the power of sale contained in the deed of trust. On 20 April 1979, Rodman, as agent for the Johnstons, purchased the property, excluding the 9.1 acre tract which had been released from the deed of trust. The notice of sale and the report of foreclosure noted that the sale was subject to taxes. From 25 May 1973, the date of the transfer of Johnston Southern's stock, through the tax year 1979, the entire 46.78 acres were shown and designated as a single tax parcel in the Mecklenburg County Tax Office. The parcel was duly listed for taxation for the years 1975 through 1979 inclusive and a tax levy was duly made for each year. In August 1979, Little-McMahan paid the City-County Tax Collector the sum of $26,855.81, that sum representing the aggregate of sums due the City and County for past due taxes and interest for the years 1975 through 1978 in the amount of $24,414.37, plus legal fees in the amount of $2,441.44 and court costs in the sum of $40.00, in exchange for which the City-County Tax Collector delivered the tax receipts to Little-McMahan for the years 1975 through 1978. The Tax Collector and Little-McMahan entered into an assignment agreement, assigning the tax lien for those years to Little-McMahan. In 1980, Little-McMahan paid the Tax Collector the sum of $8,416.77, said sum representing the aggregate of monies due the City and County for past due taxes and any interest for the year 1979 in the sum of $7,915.77, plus legal fees and costs in the amount of $501.00, in exchange for which the Tax Collector delivered the tax receipt for the year 1979 to Little-McMahan. The Tax Collector and Little-McMahan entered into a second assignment agreement, assigning the tax lien for 1979 to Little-McMahan. The tax scrolls were noted to reflect these assignments of tax liens on the property to Little-McMahan. The value of the 9.1 acre tract owned by Little-McMahan free of the deed of trust, and the proceeds of a sale thereof, would exceed the total sum of taxes, interest, legal fees and costs which were due the City and County on the property (the entire 46.78 acre tract) for the years 1975 through 1979 inclusive. The value of that portion of the property less the 9.1 acre tract would exceed the total sum of taxes, interest, legal fees and

costs due the City and County on the entire property for the years 1975 through 1979 inclusive.

On 11 August 1980, the trial court entered its order, the pertinent portions of which are as follows:

THE COURT, having considered and reviewed the pleadings, stipulations, affidavits and other matters of record and arguments of counsel, does hereby make and enter the following:

### CONCLUSIONS OF LAW

1. There is no genuine issue as to any material fact.

2. As between the defendants Rodman and Johnston and the defendant Little-McMahan, the defendant Little-McMahan is liable for the taxes, costs and interest sought by the plaintiffs for the years 1975 through 1979.

3. Within the subject 46.78-acre tract, the 9.1-acre tract located therein, owned and held by the defendant Little-McMahan free of the "Johnston" deed of trust, is primarily liable for the taxes, costs and interest sought by the plaintiffs for the years 1975 through 1979 inclusive.

4. The payments by the defendant Little-McMahan, the party responsible therefor, to the City-County Tax Collector for ad valorem taxes for the City of Charlotte and County of Mecklenburg for the years 1975 through 1979 inclusive acted to pay said taxes of said governmental bodies assessed against the entire 46.78-acre tract for said period fully and finally.

5. The assignments entered into between the defendant Little-McMahan to the City-County Tax Collector did not effectively assign to Little-McMahan the statutory lien rights available to the City of Charlotte and County of Mecklenburg against said 46.78-acre tract for the years 1975 through 1979.

6. But for the defendant Little-McMahan's prior payments to the plaintiff of the amounts involved, the defendants Rodman and Johnston would be entitled to Judgment as a matter of law on their cross-claim against the defendant Little-McMahan to be secured by a lien on said 9.1-acre tract

in an amount equal to any sums paid by the defendants Rodman and Johnston to the plaintiff or realized from a tax sale of the remainder of the subject 46.78-acre tract. However, since the defendant Little-McMahan has now paid the amounts involved to the plaintiff, this action and the cross-action of the defendants Rodman and Johnston against the defendant Little-McMahan have been rendered moot.

IT IS, THEREFORE, ORDERED, ADJUDGED and DECREED that:

1. The Motion of the defendant Little-McMahan for substitution as plaintiff in this action be and it is hereby denied and the action of the plaintiffs against the defendants Rodman and Johnston be and it is hereby dismissed and forever barred as moot.

2. The Motion of the defendant Little-McMahan Properties, Inc., and defendant Edwin R. Johnson, Trustee, to dismiss the cross-claims of the defendants Rodman and Johnston and the cross-claim of the defendant Little-McMahan against the defendants Rodman and Johnston be and they are hereby denied and dismissed.

3. The defendant Little-McMahan be and it is hereby forever barred from recovery from the defendants Rodman and Johnston of all or any portion of the taxes, interest or costs which have heretofore been paid by the defendant Little-McMahan to the City-County Tax Collector for the years 1975 through 1979.

4. The defendant Little-McMahan be and it is hereby forever barred from enforcing any lien for taxes assessed against the subject 46.78-acre tract for the years 1975 through 1979 and the notation of the assignment of said liens to the defendant Little-McMahan on the tax records of the plaintiffs be and it is hereby stricken and canceled.

5. The Motion for Summary Judgment in favor of the defendants Rodman and Johnston against the defendant Little-McMahan be and it is hereby denied and dismissed as moot due to the payment of the amounts involved to the plaintiff by the defendant Little-McMahan, the party primarily responsible therefor, and the action heretofore taken in

this Order and Judgment favoring the defendants Rodman and Johnston against the defendant Little-McMahan.

Defendant Little-McMahan has appealed from the trial court's order.

*Farris, Mallard & Underwood, P.A., by David B. Hamilton, for defendant-appellant, Little-McMahan Properties, Inc.*

*Hartsell, Hartsell & Mills, P.A., by William L. Mills, III, for the defendant-appellees Earl J. Rodman, Agent, and James G. Johnston, Sarah P. Johnston, Sarah P. Johnston, Custodian for Robert Middleton Johnston Under the North Carolina Uniform Gifts to Minors Act, and Sarah P. Johnston, Custodian for Susan Middleton Johnston Under the North Carolina Uniform Gifts to Minors Act.*

WELLS, Judge.

Little-McMahan (defendant) asserts three basic aspects of error in the trial court's order: one, that the trial court erred in concluding that the assignment of the tax liens did not give defendant the right to enforce those liens against the entire 46.78 acre tract; two, that it was error for the trial court to conclude that the 9.1 acre tract owned by defendant free of the deed of trust was primarily liable for enforcement of the tax liens against the entire 46.78 acre tract; three, that flowing from the first two erroneous conclusions, it was error to hold defendant personally liable for the payment of the tax liens on the entire property. First, we note that either on a motion to dismiss or a motion for summary judgment, it is not necessary or required for the trial court to enter conclusions of law, and that if such are entered, they are disregarded on appeal. *Mosley v. Finance Co.*, 36 N.C. App. 109, 111, 243 S.E. 2d 145, 147, *disc. rev. denied*, 295 N.C. 467, 246 S.E. 2d 9 (1978). The facts in the case *sub judice* are not in dispute, and our opinion will deal only with the questions of law presented by the ordering portions of the trial court's judgment.

[1] Defendant argues that by paying the tax liens and having the liens assigned to it, defendant may thereby pass on the tax obligation to the property itself, and hence, in this case, pass the tax obligation on to the mortgagee under the deed of trust. This argument implies that under North Carolina law it is the proper-

ty itself which accrues the ad valorem tax obligation, as those taxes are assessed from year to year. Such argument is without merit. It is the property owner who has the obligation to pay the taxes assessed against his property. The property itself serves but two purposes in the scheme of ad valorem taxation under the laws of North Carolina: one, its value forms the basis for the assessment; and two, the property itself stands as security for the collection of taxes not paid by the owner, who by statutory definition, is the "taxpayer".[1] We, therefore, hold that when the owner pays the taxes *he* owes on *his* property, the tax lien is thereby discharged. Defendant's argument that G.S. 105-372 makes specific provision for the assignment of a tax lien to the "taxpayer" is also without merit. We find similar lack of merit in defendant's alternate argument that at the time it paid the taxes due on the subject property, it was no longer the "taxpayer" because as to the portion of the property still subject to the deed of trust (46.78 acres, less the 9.1 acres released), its equity of redemption had previously been "foreclosed".

[2] Defendant also argues that the effect of the trial court's order is to make defendant "personally" liable for the unpaid taxes, a result which it argues is erroneous because a tax foreclosure is an *in rem* proceeding which cannot form the basis for a personal judgment against the taxpayer, *citing Apex v. Templeton*, 223 N.C. 645, 646-47, 27 S.E. 2d 617, 618 (1943), quoted in pertinent part as follows:

> [A] tax collector . . . may seize personal property belonging to the taxpayer and sell same or so much thereof as may be necessary for the satisfaction of all taxes due by the taxpayer. [Citations omitted.] But in an action to foreclosure a lien for delinquent taxes or special assessments, the judgment obtained in said action constitutes a lien *in rem* and the owner of the property is not personally liable for the payment thereof. [Citations omitted.] It is therefore erroneous to

1. G.S. 105-273(17) "Taxpayer" means any person whose property is subject to ad valorem property taxation by any county or municipality and any person who, under the terms of this Sub-chapter, has a duty to list property for taxation.

G.S. 105-302(c)(1) provides that the owner of the equity of redemption in real property subject to a deed of trust shall be considered the owner and that the property shall be listed in the name of the owner of the equity of redemption.

render a personal judgment against the owner or owners of land in an action to foreclose a lien for delinquent taxes.

Recognizing *Apex* as sound law, and recognizing defendant's argument as being totally ingenious, we must nevertheless reject it as being totally without merit. While the taxing authorities could not have obtained a personal judgment against defendant for failure to pay the taxes due against the property subject to the deed of trust, this in no way excused defendant's obligation to pay the taxes as they were assessed from year to year, nor can this limitation on remedies available to the taxing authority be used by defendant as a backdoor method of transferring its obligation to pay the taxes to the mortgagee. The deed of trust entered into between Johnston Southern Corporation and the Johnstons, to secure the indebtedness of defendant to the Johnstons, included a provision that "[o]wner shall pay all taxes, charges, or assessments which may become a lien on the property conveyed herein." Aside from and in addition to their rights under the deed of trust to look to defendant to pay the taxes due on the property, the Johnstons, as the lien holders under the deed of trust had a statutory remedy which, upon payment by them of the taxes on the property, would have entitled them to proceed *in personam* against defendant for the monies so paid.[2] It thus becomes clear that under the facts of this case, defendant has, by paying the taxes due, done only that which it could have, by other proceedings, been required to do.

Defendant also argues that under the provisions of the note evidencing its indebtedness to the Johnstons, the sole remedy available to the Johnstons was foreclosure against the property, thus denying the Johnstons the right to seek payment from defendant of any unpaid taxes. The notes contain the following pertinent language:

---

2. G.S. 105-386. Tax paid by holder of lien; remedy. — If any person having a lien or encumbrance of any kind upon real property shall pay the taxes that constitute a lien upon the real property:

(1) He shall thereby acquire a lien upon the real property from the time of payment, which lien shall be superior to all other liens and which may be enforced by an action in the appropriate division of the General Court of Justice of the county in which the real property is situated.

(2) He may, by an action for moneys paid to the use of the owner of the real property at the time of payment, recover the amount paid.

Provided, however, in the event Borrower shall default in the full and punctual payment of any installment of principal and interest hereof when and as the same is due and payable hereunder, the holder hereof shall have the right to proceed against the security for this Note described above for the collection in full of all such principal and interest and any other interest, charges, fees and expenses permitted by law; provided, however, in any suit upon this Note, or in any foreclosure or other action against such security or substituted security, the recovery of such holder shall be limited to such security, no deficiency judgment shall be entered and Borrower shall have no personal or additional liability hereunder whatsoever.

Defendant argues that since the foreclosure by the Johnstons was "subject to taxes", the foreclosure cut off the Johnstons' right to recover the unpaid taxes from defendant. We cannot agree. Where a third party purchases at a foreclosure sale subject to taxes due, it may be assumed that the third party's bid was made at a level to allow for the payment of taxes due as a part of his bargain, *i.e.*, he expects to pay the taxes due as a part of the purchase price, in addition to his bid price. The situation is quite different, of course, where the purchaser at foreclosure is the lien holder, because under the provisions of G.S. 105-386, had the Johnstons paid the taxes, they would have gained a statutory lien for those sums, giving them, as we noted above, a separate remedy from that available under the terms of the note.[3] The trial

---

3. The following statement appears in *King v. Lewis*, 221 N.C. 315, 318, 20 S.E. 2d 305, 306-307 (1942), in support of which the Court cites Consolidated Code, sec. 3706, which was the predecessor to G.S. 105-409, which was replaced by present G.S. 105-386 by enactment of Ch. 806 of the 1971 Session Laws:

The taxes assessed were a lien upon the land, and when the mortgagee bought at the sheriff's sale he purchased only an encumbrance, the cost of which he is entitled to have added to the debt secured by the mortgage, and it is therefore an additional lien upon the land. The mortgagee could have paid the taxes and acquired a lien upon the land to the extent of the amount so paid by him. The Code, sec. 3706 (Revisal, sec. 2858). . . .

. . . .

"It is very generally conceded that the holder of a mortgage is entitled for the protection of his interest to pay taxes assessed against the mortgaged premises in the event of failure by the mortgagor to discharge them, and that he has a right to add the sums so paid to the mortgage debt . . . ."

court correctly concluded that when defendant paid the taxes, this argument was rendered moot. *Accord, Redic v. Bank,* 241 N.C. 152, 84 S.E. 2d 542 (1954).

Defendant argues that the decisions of our Supreme Court in *Orange County v. Wilson,* 202 N.C. 424, 427-28, 163 S.E. 113, 115 (1932), *Exum v. Baker,* 115 N.C. 242, 243, 20 S.E. 448, 449 (1894), and *Wooten v. Sugg,* 114 N.C. 295, 19 S.E. 148 (1894) do not stop at recognizing the right of a mortgagee to pay taxes due and thereby acquire a lien, but also *require* the mortgagee to take such action in order to preserve his right. Those cases all involve the question of priority of lien between unpaid taxes and an unsatisfied mortgage, holding that the tax lien has priority; and those cases must be distinguished from the case *sub judice* because in this case, defendant paid the taxes, thereby making it unnecessary for the Johnstons to take the action allowed under the provisions of G.S. 105-386.

We hold that the payment by defendant of the tax liens disputed in this case discharged those liens, that the purported assignments of those liens to defendant following payment are nullities, and that the judgment of the trial court is hereby affirmed.

Defendant additionally argues that the conclusions of law numbered 3 and 6 in the trial court's order are erroneous. We need not reach those questions, as the challenged conclusions are not necessary to support the judgment of the trial court, and are disregarded on appeal. *Mosley v. Finance Co., supra.* The test here is whether on the pleadings or other materials before the trial court, either judgment is justified. We have found that the judgment of the trial court was correct and should be affirmed.

Affirmed.

Judges HEDRICK and MARTIN (Harry C.) concur.